TRACY L. WILKISON
Acting United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
RACHEL N. AGRESS (Cal. Bar No. 281703)
ANDREW M. ROACH (Cal. Bar No. 293375)
Assistant United States Attorneys
General Crimes Section
     1200 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-0487/0306
     Facsimile: (213) 894-0141
     E-mail:    Rachel.Agress@usdoj.gov
                Andrew.Roach@usdoj.gov

BYRON R. TUYAY (Cal. Bar No. 308049)
Assistant United States Attorney
Riverside Branch Office
     3403 Tenth Street, Suite 200
     Riverside, California 92501
     Telephone:  (951) 276-6230
     Facsimile:  (951) 276-6202
     E-mail:    Byron.Tuyay@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

                    UNITED STATES DISTRICT COURT

                FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiff,<br><br>               v.<br><br>KAREN SARKISSIAN,<br>  aka "Gary Sarkissian,"<br><br>          Defendant. | No. CR 13-00719(A)-PSG<br><br>GOVERNMENT'S TRIAL MEMORANDUM<br><br>Trial Date:  July 15, 2021<br>Time:        8:30 a.m.<br>Location:    Courtroom of the<br>             Hon. Philip S.<br>             Gutierrez |

     Plaintiff United States of America, by and through its counsel
of record, the Acting United States Attorney for the Central District
of California and Assistant United States Attorneys Rachel N. Agress,

Andrew M. Roach, and Byron R. Tuyay, hereby files its Trial Memorandum.

The government respectfully requests leave to file additional memoranda as may become appropriate during the course of trial.

Dated: July 8, 2021                    Respectfully submitted,

                                       TRACY L. WILKISON
                                       Acting United States Attorney

                                       SCOTT M. GARRINGER
                                       Assistant United States Attorney
                                       Chief, Criminal Division


                                            /s/
                                       RACHEL N. AGRESS
                                       ANDREW M. ROACH
                                       BYRON R. TUYAY
                                       Assistant United States Attorneys

                                       Attorneys for Plaintiff
                                       UNITED STATES OF AMERICA

# TABLE OF CONTENTS

DESCRIPTION                                                                    PAGE

TABLE OF AUTHORITIES.................................................iii

MEMORANDUM OF POINTS AND AUTHORITIES.................................1

I.    CASE SCHEDULING MATTERS.......................................1

      A.    Witnesses..............................................1

      B.    Unavailable Witnesses..................................5

      C.    Compelled Witness......................................6

      D.    Types of Evidence......................................7

II.   NOTICE OF PRIOR RULINGS......................................10

III.  THE FIRST SUPERSEDING INDICTMENT AND ELEMENTS................11

IV.   STATEMENT OF FACTS...........................................13

V.    ANTICIPATED DEFENSE CASE.....................................16

VI.   EVIDENTIARY ISSUES...........................................16

      A.    Hearsay...............................................16

            1.    Defendant's Statements, Adoptive Admissions, and
                  Agent Admissions................................16

            2.    Co-Conspirator Statements.......................19

            3.    Patient Files and Invoices......................20

            4.    Prior Inconsistent Statements, Prior Consistent
                  Statements, and Impeachment.....................21

      B.    Expert Testimony......................................21

      C.    Lay Opinion Testimony.................................23

      D.    Percipient Witness Testimony..........................24

      E.    Authentication and Foundation.........................25

            1.    Federal Rule of Evidence 901....................25

            2.    Audio Recordings................................26

      F.    Transcript of Defendant's Recorded Meetings with a CI
            and Transcript of Co-defendant/Co-conspirator Smith's

i

**<u>TABLE OF CONTENTS (CONTINUED)</u>**

<u>DESCRIPTION</u>                                                      <u>PAGE</u>

       Recorded Interview......................................27

G.   Cross-Examination of Defendant..........................28

H.   Defense Witnesses.......................................29

I.   Character Evidence......................................29

J.   Reciprocal Discovery and Expert Disclosures.............30

K.   Jury Nullification......................................31

1

**TABLE OF AUTHORITIES**

2    DESCRIPTION                                                    PAGE

3    **FEDERAL CASES**

4    Anderson v. United States,

5        417 U.S. 211 (1974)..........................................20

6    Bourjaily v. United States,

7        483 U.S. 171 (1987)......................................19, 20

8    Gallego v. United States,

9        276 F.2d 914 (9th Cir. 1960)................................26

10   Michelson v. United States,

11       335 U.S. 469 (1948).....................................29, 30

12   Phillips v. United States,

13       357 F.2d 297 (9th Cir. 1965)..........................22, 24-25

14   United States v. Aramula-Ruiz,

15       987 F.2d 599 (9th Cir. 1993)................................20

16   United States v. Beck,

17       418 F.3d 1008, 1015 (9th Cir. 2005)........................23

18   United States v. Black,

19       767 F.2d 1334 (9th Cir. 1985)...............................26

20   United States v. Burnette,

21       698 F.2d 1038, 1051 (9th Cir. 1983)........................23

22   United States v. Burreson,

23       643 F.2d 1344 (9th Cir. 1981)...........................17, 18

24   United States v. Bush,

25       522 F.2d 641 (7th Cir. 1975)................................22

26   United States v. Carrillo,

27       16 F.3d 1046 (9th Cir. 1994)................................17

28

1

**TABLE OF AUTHORITIES (CONTINUED)**

2   DESCRIPTION                                                        PAGE

3   United States v. Chen,

4       754 F.2d 817 (9th Cir. 1985)...................................28

5   United States v. Chu Kong Yin,

6       925 F.2d 990 (9th Cir. 1991)...............................24-25

7   United States v. Fuentes-Montijo,

8       68 F.3d 352 (9th Cir. 1995)....................................27

9   United States v. Kerley,

10      784 F.3d 327, 337-38 (6th Cir. 2015)..........................24

11  United States v. King,

12      587 F.2d 956 (9th Cir. 1978)...................................26

13  United States v. Knigge,

14      832 F.2d 1100 (9th Cir.  1987),

15      amended, 846 F.2d 591 (9th Cir. 1988)....................19, 21

16  United States v. Marin,

17      669 F.2d 73 (2d Cir. 1982).....................................18

18  United States v. Manzano,

19      793 F. App'x 360 (6th Cir. 2019) ............................24

20  United States v. McCollom,

21      664 F.2d 56 (5th Cir. 1981)....................................30

22  United States v. Millan,

23      730 F App'x 488 (9th Cir. 2018) .............................25

24  United States v. Miranda-Uriarte,

25      649 F.2d 1345 (9th Cir. 1981)..................................29

26  United States v. Mitchell,

27      502 F.3d 931 (9th Cir. 2007)...................................18

28

**TABLE OF AUTHORITIES (CONTINUED)**

DESCRIPTION                                                          PAGE

United States v. Orellana-Blanco,

    294 F.3d 1143 (9th Cir. 2002)................................17

United States v. Ortega,

    203 F.3d 675 (9th Cir. 2000).................................17

United States v. Phillips,

    577 F.2d 495 (9th Cir. 1978).................................28

United States v. Powell,

    955 F.2d 1206 (9th Cir. 1992)................................31

United States v. Ranney,

    719 F.2d 1183 (1st Cir. 1983)................................22

United States v. Schmit,

    881 F.2d 608 (9th Cir. 1989).................................21

United States v. Smith,

    591 F.3d 974 (8th Cir. 2010).................................27

United States v. Smith,

    893 F.2d 1573 (9th Cir. 1990)............................20, 26

United States v. Taghipour,

    964 F.2d 908 (9th Cir. 1992).................................27

United States v. Taylor,

    716 F.2d 701 (9th Cir. 1983).................................26

United States v. Turner,

    528 F.2d 143 (9th Cir. 1975).................................28

United States v. White,

    492 F.3d 380, 403-04 (6th Cir. 2007).....................22, 25

United States v. Yarborough,

    852 F.2d 1522 (9th Cir. 1988)................................20

1

**TABLE OF AUTHORITIES (CONTINUED)**

2 DESCRIPTION                                                                    PAGE

3 Zal v. Steppe,

4     968 F.2d 924 (9th Cir. 1992)....................................31

5 **STATUTES**

6 18 U.S.C. § 1347.............................................11, 12

7 18 U.S.C. § 1956(h).........................................11, 12

8 18 U.S.C. § 1956(a)(1)(B)(i)................................11, 12

9

10 **FEDERAL RULES OF EVIDENCE**

11 Fed. R. Evid. 106..............................................17

12 Fed. R. Evid. 405(a)...........................................30

13 Fed. R. Evid. 613............................................9, 21

14 Fed. R. Evid. 801(c)...........................................18

15 Fed. R. Evid. 801(d)......................................*passim*

16 Fed. R. Evid. 802..............................................17

17 Fed. R. Evid. 803(4)...........................................20

18 Fed. R. Evid. 804..........................................1, 5–6

19 Fed. R. Evid. 901(a)...........................................21

20 Fed. R. Evid. 901(b)...........................................27

21 Fed. R. Evid. 902(11)...........................................7

22 Fed. R. Evid. 1003.............................................26

23

24

25

26

27

28

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

**I.   CASE SCHEDULING MATTERS**

3

Jury trial is set for July 15, 2021, at 8:30 a.m.  The estimated

4

time for the government's case-in-chief is six to eight days.  With

5

cross-examination and defense witnesses, the parties have estimated

6

an eight-day jury trial.  Defendant is released on bond.

7

**A.   Witnesses**

8

The government anticipates calling approximately 21 witnesses[1]

9

in its case-in-chief, in the following broad categories:

10

- Current Medicare contractor witness (Angelo Cruz) who will

11

testify about: a post-payment review conducted of the

12

clinic on Sunset Boulevard (the "Sunset Clinic") operated

13

under Dr. Louis Bascoy (now deceased) where defendant Karen

14

("Gary") Sarkissian ("defendant") and co-defendant L'Tanya

15

Smith ("Smith") worked.

16

- Two former employees of the Sunset Clinic (Sylvia Perez and

17

Maria del Carmen Lopez) and the former office manager of

18

Dr. Louis Bascoy's other clinic (Margarita Dosal) who will

19

testify regarding the operations of the Sunset Clinic,

20

their conversations with defendant, and statements made by

21

Smith during and in furtherance of the conspiracy.

22

- Sunset Clinic Medicare beneficiaries M.L., M.P., and S.C.

23

(now deceased), who will testify that, in some cases, they

24

were recruited by marketers with promises of free DME and

25

_____

26

[1] Four witnesses—Salvador Castillo, Maria del Carmen Lopez,

Martha Lopez, and Dr. Howard Pfupajena—are unavailable pursuant to

27

Federal Rule of Evidence 804, for the reasons discussed in Section B.

Their prior testimony will be read into the record and the government

28

includes a description of the testimony of the four unavailable

witnesses in this section.

were taken to a medical clinic in Los Angeles rather than to their primary care physicians for cursory examinations; did not have allergies or other conditions indicated in their Sunset Clinic patient files; and did not receive various services, items, and tests for which the Sunset Clinic billed Medicare, including allergy tests, as charged in the First Superseding Indictment ("FSI").

- Two primary care physicians (Dr. Andres Jimenez and Dr. Tu Alfredo Om) whose patients include four of the Medicare beneficiaries referenced in the FSI, who will testify that they never ordered allergy tests for those beneficiaries; those beneficiaries did not have allergies; and those beneficiaries did not have other conditions indicated in the beneficiaries' Sunset Clinic patient files.

- Karapet Sarafian and Dr. Claude Cahen, who will testify about the Medicare fraud schemes at the medical clinics with which they were associated, including:[2]

  o Mr. Sarafian's purchases of patients and patient information for his IDTF, Zuz Diagnostic ("Zuz"); his laundering of funds through co-defendant Khachatour Hakobyan ("Hakobyan") in order to obtain cash to pay for patients and patient information; and Zuz's

---

[2] These individuals worked at clinics that are identified in the FSI as depositors with the alleged money laundering corporations. The government alleges that there are other clinics that also were depositors with the alleged money laundering corporations, including clinics that received fraudulent diagnostic test referrals from co-conspirator Smith at the Sunset Clinic, such as the clinic associated with Dr. Ronald Carlish, as generally alleged in the FSI.

1    billing Medicare for services that were not provided;
2    and

3    ○ Dr. Cahen's role as the medical director of an IDTF
4    where no tests were performed in the office, Dr. Cahen
5    never saw any patient files, Dr. Cahen never
6    supervised the technicians, Dr. Cahen was out of the
7    country for several months while the IDTF continued to
8    bill Medicare, and Dr. Cahen never confirmed that the
9    tests for which the IDTF billed Medicare were actually
10    performed or medically necessary.

11  • Co-conspirator/co-defendant L'Tanya Smith will be
12    questioned about the health care fraud she committed with
13    defendant at the Sunset Clinic, conduct to which she pled
14    guilty in 2016.  Smith will also be questioned about other
15    fraudulent medical clinics where she worked with defendant
16    and where they engaged in fraudulent conduct similar to the
17    conduct they engaged in at the Sunset Clinic.
18    Specifically, the government will seek to elicit evidence
19    regarding Eagle-1 Healthcare, (also known as the "North
20    Virgil Clinic"), where Smith worked as a physician's
21    assistant and defendant worked as an office manager between
22    around June 2010 and February 2011 immediately following
23    the closure of the Sunset Clinic.

24  • Dr. Howard Pfupajena (now deceased), who will testify about
25    Smith's conduct as a physician's assistant at two clinics
26    under him, and defendant's conduct as the office manager of
27    one of those clinics, Eagle-1 Healthcare.

28

3

- Jerayr Rostamian, who will testify about his arrangements to launder funds through his company, Med-Tech, for defendant at the Sunset Clinic and at Eagle-1 Healthcare, another clinic where defendant and Smith worked under Dr. Pfupajena.

- Bank employee witness Argishti Avetyan (Wells Fargo Bank), who will testify regarding bank practices regarding cashing and depositing checks, the depositing of checks from the Sunset Clinic to two of Hakobyan and co-defendant Aram Aramyan's alleged money laundering corporations, and two of these transactions for which defendant appears to have been present at the bank.

- Special Agents ("SAs") with the Federal Bureau of Investigation ("FBI") and the Internal Revenue Service – Criminal Investigation ("IRS-CI") who will testify regarding, among other things, Sunset Clinic documents provided by Dr. Bascoy (FBI SA Angelica Gottardi); analysis of Medicare claims data for the Sunset Clinic and claims data for entities to which Sunset Clinic provided referrals, Sunset Clinic patient files, Sunset Clinic invoices as well as other company invoices, bank records for the some of the alleged money laundering corporations and the Sunset Clinic, and other miscellaneous records obtained during the investigation (FBI SAs Nancy Kevany and Gottardi and IRS-CI SA Oleg Pobereyko); and surveillance of defendant and defendant's recorded statements to a confidential informant ("CI") regarding the Sunset Clinic and money laundering (FBI SA Darrell Twedt).

- Current Medicare contractor Teresa Cirelli of Noridian Healthcare Solutions, LLC ("Noridian"), who will testify as an expert on Medicare and its enrollment and billing processes, and the Medicare rules and regulations surrounding medical clinics, durable medical equipment ("DME") suppliers, and independent diagnostic testing facilities ("IDTFs").  She will also testify, in her expert opinion, about how Medicare would have viewed or reacted to the Medicare claims submitted by the Sunset Clinic that underpin the health care fraud charges in this case.

- SA Keith Kuntz, formerly with the U.S. Department of Health and Human Services, Office of Inspector General, and now with the Food and Drug Administration, Office of Criminal Investigations, who will testify as an expert on health care fraud schemes in Southern California and provide testimony about those schemes and money laundering in association with those schemes.

Medicare beneficiary Miguel Ponce and former Sunset Clinic employee Sylvia Perez will require the assistance of a Spanish interpreter, for which the government has made arrangements.  Mr. Sarafian will require the assistance of an Armenian interpreter, for which the government has made arrangements.

### B.  Unavailable Witnesses

Two witnesses, Dr. Howard Pfupajena and Salvador Castillo, are deceased and hence, are unavailable pursuant to Federal Rule of Evidence 804(a)(4).  It is expected that two additional witnesses, Maria del Carmen Lopez and Martha Lopez, will be unavailable pursuant to Federal Rule of Evidence 804(a)(5)(A), as it is expected that they

5

will fail to appear at trial despite the government's efforts to procure their attendance by process or other reasonable means.  The government has moved for a ruling by the Court that the prior trial testimony of all four witnesses be admitted pursuant to Federal Rule of Evidence 804(b)(1).  (CR 551.)

Their prior testimony will be read into the record, using the following protocols:  the Court to read all statements previously made by the Court; government counsel to read all statements previously made by government counsel; defense counsel to read all statements previously made by defense counsel; a third-party, such as a law enforcement agent, to read all statements previously made by the unavailable witness or an interpreter; and any references to the names of prior counsel or the gender pronouns of prior counsel to be adjusted to match the current individuals reading the testimony.[3]  In addition, to the extent exhibits were previously admitted into the record in reliance on testimony by these witnesses, the government intends to rely on the Court's prior evidentiary rulings and will seek to admit those same exhibits during the course of reading the prior testimony to the jury.

**C.   Compelled Witness**

The government subpoenaed L'Tanya Smith to testify at trial. Counsel for Smith advised the government that if called to the stand, she will, at that time, refuse to answer questions, invoking the

---

[3] The government will confer with defense counsel regarding the omission of certain portions of the prior testimony or proceedings, such as where objections were sustained, sidebars were held, or there were discussions between the Court and counsel that are not relevant to the testimony.  To the extent that there is no objection by defense counsel, copies of transcripts indicating these omissions will be provided to the Court prior to each unavailable witness's testimony.

1  constitutional privilege against self-incrimination.  The government

2  moved for an order compelling Smith to testify and produce evidence

3  pursuant to the provisions of 18 U.S.C. § 6001 et seq.  (CR 543.)

4  Smith's counsel has objected, has requested an ex parte in camera

5  hearing with the Court, scheduled for July 15, 2021.  (CR 545.)

6       **D.   Types of Evidence**

7       The government intends to admit the following general types of

8  evidence at trial, in addition to the witness testimony referenced

9  above:[4]

10       • Business Records:  Medicare documents and claims data, bank

11         records, and other miscellaneous business records as self-

12         authenticating business records pursuant to Federal Rule of

13         Evidence 902(11).

14       • Sunset Clinic Records, Eagle-1 Healthcare Clinic Records,

15         HiChoice Records, and GN Group Records:  Numerous documents

16         (including patient files,[5] employment records, and

17         invoices) that the government obtained from the now-

18         deceased Dr. Bascoy, clinic business records that the

19         government obtained from the now-deceased Dr. Pfupajena,[6]

20         and invoices that the government obtained from HiChoice

21

22

23  [4] As discussed further in Section II, infra, it is the
   government's position that the Court's rulings from the prior trial,
   including evidentiary rulings regarding the admissibility of

24  exhibits, are the law of the case.  (CR 538.)  The government intends
   to rely on those admissibility rulings, except for with respect to

25  any new exhibits.

26  [5] This includes one patient file exhibit introduced by the
   defense during cross-examination of Maria del Carmen Lopez, who is

27  now unavailable.

28  [6] This includes one business record exhibit introduced by the
   defense during cross-examination of Dr. Pfupajena, who is now
   deceased.

Health Care Inc. ("HiChoice"), another depositor with two of the alleged money laundering corporations referenced in the FSI.  The Sunset Clinic and HiChoice documents will be identified, authenticated, and admitted by agents who received the records from Dr. Bascoy, and Jerayr Rostamian will identify certain of the records as well.  Dr. Pfupajena's prior testimony identified and authenticated documents pertaining to his clinics, and Mr. Rostamian likely will identify certain of these records as well.  As discussed more fully below, these records also may be admissible under other exceptions to the hearsay rules (for example, because they are defendant or co-conspirators' statements (including adoptive admissions), because they are records of medical diagnosis or treatment, or because they are not being admitted for the truth of their contents).  The latter exception applies to the HiChoice invoices and a GN Group invoice, which are believed to be fraudulent and which will be admitted by the agent who obtained them.

- Audio Clips of Co-conspirator/Co-defendant Smith's Statements:  Audio clips taken from Smith's interview with agents during the course of the investigation.  Depending on Smith's testimony, the government may seek to introduce these recordings (discussed more fully below).  When played during trial, the audio will be synced with transcripts of the clips.  The government previously identified those clips in the transcript of the interview, and, after one small correction to the transcript was made, defense

counsel agreed that the transcript accurately reflects the audio recordings.  Portions of these audio clips will only be admitted to the extent they fall within the purview of Federal Rules of Evidence 613 and 801.  <u>See</u> Section VI.A.4, <u>infra</u>.

- <u>Transcript Excerpts of Defendant's Statements to a CI</u>: Portions of the English translation transcripts of defendant's conversations in Russian with a CI.  Two agents will read the portions of the transcript into the record; the government does not intend to play the recordings.[7] The government previously identified the excerpts that it intends to use, and defense counsel agreed that the translation is accurate and that the transcripts accurately reflect the audio recordings.  The Court has previously ruled on the rule of completeness with respect to these transcripts (discussed more fully below).

- <u>Certified Public Records</u>:  Certified California Department of Motor Vehicles photographs of certain individuals, defendant's citizenship application, court documents pertaining to co-conspirator Smith, and Nevada Secretary of State records.

- <u>Documents Containing Defendant's Statements</u>:  Certain documents referenced in this section as statements of defendant pursuant to Federal Rule of Evidence 801(d)(2)(A).

---

[7] A third, female agent will read a small portion of text spoken by a female friend of defendant, who was an unindicted co-conspirator.

9

- <u>Summary Charts</u>:  Summary charts pursuant to Federal Rule of Evidence 1006 summarizing Medicare claims data, patient files, bank records, and other miscellaneous records. While many of these summary charts have been admitted pursuant to the Court's ruling on the government's motion <u>in limine</u>, a few have since been revised, and the government intends to seek to admit at trial these newly-revised summary charts.

- <u>Photographs</u>:  Photographs of defendant's meetings with the CI that took place at the Sunset Clinic.

The government has provided all of these documents to defendant during the course of discovery in this case.  The government also intends to provide defendant with an electronic set of exhibits (and already has provided a preliminary electronic set of exhibits to counsel for defendant).

To date, the government has not received any reciprocal discovery, including any planned exhibits or witness statements from any witnesses defendant intends to call at trial.  The government has requested reciprocal discovery in all of its discovery production letters.  Recently, the defense has indicated that it does not intend to introduce any exhibits or call any witness in its case-in-chief; however, defendant reserves the right to testify in his defense.

## II.  NOTICE OF PRIOR RULINGS

On June 9, 2021, the government filed a Notice of Prior Rulings setting forth the government's position that the Court's prior rulings in this case, including the Court's prior rulings on the parties' motions <u>in limine</u> as well as the Court's oral rulings made during the first trial in this case on evidentiary issues, should

1    stand with respect to the retrial.  (CR 538.)  The government argued

2    that there is no basis to exclude these rulings, as there was no

3    clear error or change in circumstances and, unless otherwise noted,

4    the Court's prior rulings were not disturbed by the Ninth Circuit

5    decision in this case.  (Id., referencing Case No. 16-50347, Dkts.

6    63, 64.).  On June 21, 2021, defendant filed a response arguing that

7    the Court "should not make a decision regarding the previous rulings

8    made by the Court at the previous trial until the Government is

9    submitting the evidence during the trial."  (CR 541.)

10       At this time, the Court has not issued an order regarding the

11   Notice or defendant's response.

12       The government intends to file a supplemental notice of the

13   Court's prior evidentiary rulings.  It is the government's position

14   that the Court's rulings from the prior trial, including evidentiary

15   rulings regarding the admissibility of exhibits, are the law of the

16   case.  (CR 538.)  The government intends to rely on prior

17   admissibility rulings, except for with respect to any new exhibits.

18   **III. THE FIRST SUPERSEDING INDICTMENT AND ELEMENTS**

19       Defendant has been charged with one count of Conspiracy to

20   Commit Money Laundering, in violation of 18 U.S.C. § 1956(h), five

21   counts of Money Laundering, in violation of 18 U.S.C.

22   § 1956(a)(1)(B)(i), and five counts of Health Care Fraud, in

23   violation of 18 U.S.C. § 1347.  Defendant was arraigned on the FSI

24   and pled not guilty to all of the charges therein on April 2, 2014.

25       Count one charges defendant with Conspiracy to Commit Money

26   Laundering, in violation of 18 U.S.C. § 1956(h), which has the

27   following elements:

28

First, beginning on or about [date], and ending on or about [date], there was an agreement between two or more persons to commit money laundering;

Second, the defendant became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it.

Counts twelve, thirteen, fourteen, fifteen, seventeen, and eighteen charge defendant with Money Laundering, in violation of 18 U.S.C. § 1956(a)(1)(B)(i), which has the following elements:

First, the defendant conducted a financial transaction involving property that represented the proceeds of health care fraud;

Second, the defendant knew that the property represented the proceeds of health care fraud or some other form of unlawful activity; and

Third, the defendant knew that the transaction was designed in whole or in part to conceal or disguise the nature, location, source, ownership, or control of the proceeds.

Counts twenty through twenty-four charge defendant with Health Care Fraud, in violation of 18 U.S.C. § 1347, which has the following elements:

First, the defendant knowingly and willfully executed or attempted to execute a scheme or plan to defraud a health care benefit program by means of false or fraudulent pretenses, representations, or promises;

Second, the defendant acted with the intent to defraud;

Third, Medicare was a health care benefit program; and

Fourth, the scheme was executed in connection with the delivery of or payment for health care benefits, items, or services.

A "scheme to defraud" and "scheme for obtaining money or property" means any deliberate plan of action or course of conduct by which someone intends to deceive and cheat another or by which someone intends to deprive the victim of money or property by means of deception.

## IV.   STATEMENT OF FACTS

The government intends to prove at trial the following facts, among others:[8]

### Health Care Fraud at the Sunset Clinic

Defendant was the office manager at the Sunset Clinic, where defendant and co-conspirator/co-defendant L'Tanya Smith worked, and at which Smith was employed as a physician's assistant.  The Sunset Clinic was enrolled as a Medicare provider and was associated with Dr. Louis Bascoy.  Defendant, in conjunction with Dr. Bascoy, controlled the bank account into which Medicare electronically deposited the Sunset Clinic's billing reimbursements.

Between in or about July 2009 and on or about March 2010, the Sunset Clinic, through defendant and Smith, submitted and caused to be submitted more than $1.2 million in false and fraudulent claims to Medicare.[9]  The Medicare beneficiaries on whose behalf these claims were submitted often were illegally recruited to come to the Sunset Clinic and often lived more than 50 miles from the Sunset Clinic. The claims submitted were based almost entirely on services (mainly

---

[8] The government has filed a joint statement of case with defense counsel.  (CR 548.)  The statement of facts herein provides the Court with a more detailed description of the facts that the government will prove at trial.

[9] Although the FSI alleges that the amount submitted was $644,415, this amount only covers claims that actually were paid. When claims that were fully denied are also included, the amount submitted increases to approximately $1.2 million.

diagnostic tests, such as allergy tests) ordered by Smith, and were fraudulent because the services ordered were (1) not medically necessary and (2) sometimes never provided.  Smith also prescribed medically unnecessary DME (mainly orthotics) and other medically unnecessary diagnostic tests that were referred to other Medicare providers, some of which were also depositors into the money laundering conspiracy alleged in count one of the FSI (including the Ronald Carlish Medical Corporation).  These providers, in turn, submitted and caused to be submitted over $10 million in false and fraudulent claims to Medicare.  As a part of the execution of defendant and Smith's health care fraud scheme, the FSI charges defendant with five counts of health care fraud based on five specific claims submitted to Medicare on behalf of five beneficiaries for allergy tests.  These beneficiaries did not have allergies and did not receive the allergy tests for which Medicare was billed.

### Money Laundering of Health Care Fraud Proceeds

During the time period from approximately July 2009 to March 2010, defendant conspired with co-defendants Khachatour Hakobyan, Aram Aramyan and others, to conceal and disguise the nature, location, source, ownership, and control of the proceeds of health care fraud committed by various health care entities, among them the Sunset Clinic, that were enrolled with the Medicare program as providers.  These Medicare providers included several medical clinics or other health care entities identified in the FSI.[10]

---

[10] Other entities identified in the FSI include, but are not limited to, the clinic of Dr. Claude R. Cahen (identified in the FSI as the Arcadia Clinic based on its location) and an IDTF called Zuz Diagnostic.

The Medicare providers, among them the Sunset Clinic, laundered health care fraud proceeds by writing checks to the five sham corporations owned or operated by co-defendants Hakobyan and Aramyan -- Panarama Group ("Panarama"), Pegas Group ("Pegas"), Univision Group ("Univision"), IFA Group ("IFA"), and UFA Group ("UFA") (collectively, "the five corporations").  As a part of this conspiracy, defendant wrote checks to IFA and UFA from the Sunset Clinic's health care fraud proceeds.

Some of the checks written to IFA and UFA by Medicare providers, including the Sunset Clinic, falsely indicated that they were payments for services such as advertising, investment, consulting, management, equipment, or professional or technical services.  IFA and UFA in fact had no connection to the medical industry, did not provide any legitimate business services to the Medicare providers that wrote the checks, and existed primarily to launder money.

A common component of health care fraud schemes in Southern California is the fraudulent Medicare providers' need for cash to pay illegal kickbacks to marketers, to pay for patient information, and to pay illegal kickbacks to other Medicare providers from which they have received referrals.  Co-defendants Hakobyan and Aramyan deposited checks from the Medicare providers into the bank accounts of the five corporations and arranged for the checks to be cashed. Co-defendants Hakobyan and Aramyan then returned some of the cash to co-conspirators affiliated with the Medicare providers, often less an approximately 10% commission as payment for having laundered the proceeds of health care fraud.

## V.   ANTICIPATED DEFENSE CASE

Based on the defense previously argued by defendant in the prior trial, the government anticipates that defendant will claim that he was neither aware that co-defendant Smith was ordering medically unnecessary diagnostic tests nor that the tests were not being provided by the Sunset Clinic or the IDTFs that received the referrals from the Sunset Clinic.

## VI.   EVIDENTIARY ISSUES

### A.   Hearsay

Federal Rule of Evidence 801(c) defines "hearsay" as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."  Fed. R. Evid. 801(c).

#### 1.   Defendant's Statements, Adoptive Admissions, and Agent Admissions

The government intends to admit statements made by defendant. Statements by a party opponent when offered against that party are excluded from the hearsay definition.  Fed. R. Evid. 801(d)(2)(A). Thus, defendant's statements may be admitted against the defendant.

In addition, statements that defendant adopted or that were made by an agent of defendant on a matter within the scope of that agency relationship are similarly admissible.  Fed. R. Evid. 801(d)(2)(C), (D).  Under this theory, statements made by co-conspirator Smith during an interview with Medicare fraud investigator Angelo Cruz were adopted by defendant, who was present during the interview.

Moreover, as set out below, statements by a co-conspirator during and in furtherance of the conspiracy are admissible.  Fed. R. Evid. 801(d)(2)(E).  Some of the documents were signed or adopted

16

through use by defendant and/or co-conspirator Smith (including patient history forms in the Sunset Clinic patient files signed by Smith and patient file documentation used by defendant and Smith to bill Medicare) and thus constitute adoptive admissions.[11]  See United States v. Orellana-Blanco, 294 F.3d 1143 (9th Cir. 2002) (noting that "a signature would ordinarily make adoption plain"); United States v. Carrillo, 16 F.3d 1046 (9th Cir. 1994) (holding that a document possessed by a defendant is an adopted admission where the defendant takes some step to act on it to demonstrate more than mere possession of the document).

When the government offers some of a defendant's prior statements, the door is not thereby opened to the defendant to introduce all of his or her out-of-court statements because, when offered by the defendant, the statements are hearsay.  See Fed. R. Evid. 801(d)(2); United States v. Burreson, 643 F.2d 1344, 1349 (9th Cir. 1981).  Accordingly, exculpatory statements made by a defendant are hearsay and are not admissible at trial, when offered by the defendant.  See Fed. R. Evid. 801(d), 802; United States v. Ortega, 203 F.3d 675, 682 (9th Cir. 2000).

The only recognized limitation of this principle is the "doctrine of completeness," which has been applied by some courts to admit additional portions of a defendant's prior statements where necessary to explain an admitted statement, place it in context, or avoid misleading the trier of fact.  See Fed. R. Evid. 106; Burreson, 643 F.2d at 1349; United States v. Marin, 669 F.2d 73, 84 (2d Cir. 1982).  The completeness doctrine does not require introduction of

---

[11] As discussed below, the patient files are admissible based on additional bases as well.  See infra Section VI.B.3.

portions of a statement that are neither explanatory of, nor relevant to, the admitted passages.  United States v. Mitchell, 502 F.3d 931, 965 (9th Cir. 2007).  Nor does the doctrine apply when a government witness is merely summarizing a defendant's statements and not playing an audio recording or introducing a written statement or transcript.

In the prior trial, the government and defendant filed a joint stipulation regarding the rule of completeness as it pertains to excerpts of translated transcripts of defendant's meetings with a CI (CR 239), and the Court found those excerpts to be complete (CR 368 at 22-28, CR 354 at 65, 95-98 (rulings on motion in limine and joint stipulation).  In addition, defendant waived any additional request or argument that additional portions of the transcript be read into the record.  (CR 354 at 65, 89-98.)  The government intends to admit those same transcript excerpts during the retrial and as set out in the Notice of Prior Rulings, it is the government's position that the Court's prior rulings, including evidentiary rulings, are the law of the case.  (CR 538.)

In addition, FBI SA Darrell Twedt will summarize additional statements made by defendant during those meetings, based on his review of the English transcript as well as his observations during the recorded conversations.  As noted above, the doctrine of completeness does not apply when a government witness is merely summarizing a defendant's statements and not playing an audio recording or introducing a written statement or transcript, and the Court's prior ruling found this testimony of SA Twedt admissible. (Id.)

2.   <u>Co-Conspirator Statements</u>

The government intends to admit statements made by Smith, a co-conspirator (and co-defendant) made during and in furtherance of the health care fraud scheme.  The government also intends to admit statements made by co-conspirator (and co-defendant) Hakobyan in furtherance of the money laundering conspiracy.  These statements will pertain to and help explain how the respective conspiracies operated.

A statement made by one co-conspirator or co-schemer during the course and in furtherance of the conspiracy or scheme may be used against another conspirator or co-schemer because such statements are not hearsay.  Fed. R. Evid. 801(d)(2)(E); <u>Bourjaily v. United States</u>, 483 U.S. 171, 183 (1987).  A statement admitted under Rule 801(d)(2)(E) does not violate the Confrontation Clause, and no independent inquiry into reliability is needed.  <u>Bourjaily</u>, 483 U.S. at 183-84; <u>United States v. Knigge</u>, 832 F.2d 1100, 1107 (9th Cir. 1987), <u>amended</u>, 846 F.2d 591 (9th Cir. 1988).  Rule 801(d)(2)(E) requires a foundation that:  (1) the declaration was made during the life of the conspiracy; (2) the declaration was made in furtherance of the conspiracy; and (3) there is, including the co-conspirator's declaration itself, sufficient proof of the existence of the conspiracy and defendant's connection to it.  <u>Bourjaily</u>, 483 U.S. at 173, 181; <u>United States v. Smith</u>, 893 F.2d 1573, 1578 (9th Cir. 1990).  These foundational requirements must be established by a preponderance of the evidence.  <u>Bourjaily</u>, 483 U.S. at 175; <u>United States v. Schmit</u>, 881 F.2d 608, 610 (9th Cir. 1989).  To be admissible under Rule 801(d)(2)(E), the statement must "further the common objectives of the conspiracy," or "set in motion transactions

19

1    that [are] an integral part of the [conspiracy]." United States v.

2    Aramula-Ruiz, 987 F.2d 599, 607-08 (9th Cir. 1993); United States v.

3    Yarborough, 852 F.2d 1522, 1535 (9th Cir. 1988).

4            3.   Patient Files and Invoices

5        The government intends to introduce into evidence patient files

6    provided by Dr. Bascoy, Sunset Clinic invoices from IFA, UFA, and Mr.

7    Rostamian's company, Med-Tech, that were provided by Dr. Bascoy, IFA

8    and UFA invoices provided by HiChoice, another alleged money

9    laundering depositor, and an invoice from GN Group to Dr. Bascoy at

10   his other clinic.

11       The patient files contain fraudulent medical records.  None of

12   the documents in the patient files contain hearsay statements because

13   they are statements of medical diagnosis or treatment and describe

14   medical histories.  See Fed. R. Evid. 803(4) (statements for medical

15   diagnosis or treatment not hearsay).

16       Moreover, the government is not offering the statements in the

17   patient files or the invoices for their truth but to show that the

18   documents contained within the files are fraudulent.  See Anderson v.

19   United States, 417 U.S. 211, 219-20 (1974) ("The election contest

20   testimony of Tomblin and Browning, however, was not admitted into

21   evidence in the [§] 241 trial to prove the truth of anything asserted

22   therein.  Quite the contrary, the point of the prosecutor's

23   introducing those statements was simply to prove that the statements

24   were made so as to establish a foundation for later showing, through

25   other admissible evidence, that they were false."); Knigge, 832 F.2d

26   at 1108.

27

28

20

4.   <u>Prior Inconsistent Statements, Prior Consistent
Statements, and Impeachment</u>

To the extent Smith testifies inconsistently with statements made or adopted at her change of plea proceeding, such inconsistent statements can be admitted both for impeachment purposes, as well as under a hearsay exclusion.  <u>See</u> Fed. R. Evid. 613 and 801(d)(1)(A) (declarant-witness's prior inconsistent statement given under penalty of perjury at proceeding).  To the extent Smith testifies inconsistently with prior statements made during the course of her interview with agents, such statements can be admitted for impeachment purposes as extrinsic evidence of her prior inconsistent statements.  Fed. R. Evid. 613.

To the extent Smith is subject to cross-examination and her credibility is attacked or it is implied that she recently fabricated her testimony or is acting from a recent improper influence or motive in so testifying, any prior consistent statements made during the course of Smith's interview with agents, are admissible pursuant to Federal of Evidence 801(d)(1)(B)(i)-(ii).

**B.   Expert Testimony**

SA Keith Kuntz will testify as a <u>modus operandi</u> expert at trial regarding health care fraud schemes in Southern California and money laundering associated with those schemes.  The law regarding the admissibility of expert testimony, and SA Kuntz's in particular, is set forth in the government's opposition to defendant Sarkissian's motions <u>in limine</u> to exclude this testimony.  (CR 209, 266.)  The Court ruled on these motions on January 11, 2016 and February 4, 2016.  (CR 226, 271, 369.)

The government will also call Teresa Cirelli, a Medicare contractor employee at Noridian, as an expert witness.  Ms. Cirelli will testify about, among other things, Medicare's rules and regulations, and whether, in her expert opinion, Medicare would have paid for the services and items at issue in this case if Medicare had known of certain facts.  The government has noticed Ms. Cirelli as an expert.  See United States v. White, 492 F.3d 380, 403-04 (6th Cir. 2007) ("The Medicare program operates within a complex and intricate regulatory scheme and we cannot say that the average lay person, including any Medicare beneficiary, commands a working knowledge of Medicare reimbursement procedures.").

Ms. Cirelli's testimony tends to prove the existence of the scheme to defraud, the effect that the concealed facts would have had on Medicare if Medicare had known them, the materiality of the concealed facts, and the deceptive nature of the representations or omissions.  See United States v. Ranney, 719 F.2d 1183, 1187-89 (1st Cir. 1983); United States v. Bush, 522 F.2d 641, 649-51 (7th Cir. 1975).  While the government is not required to prove that Medicare was actually defrauded, this kind of testimony is proper in fraud scheme prosecutions because it demonstrates whether the scheme was capable of misleading the victim.  See Phillips v. United States, 356 F.2d 297, 307-09 (9th Cir. 1965).

The government will file a Proposed Order of Supplemental Findings in relation to the expert testimony of SA Kuntz and Ms. Cirelli.  The Proposed Order of Supplemental Findings will address the rulings of the Ninth Circuit on appeal (see Case No. 16-50347, Dkt. 63, 64) and will specify the qualification of the witnesses and the basis on which their expert testimony is to be admitted.

### C.   Lay Opinion Testimony

The prior testimony of Maria del Carmen Lopez, which will be read into the record, contains her observation that there were more patient test order forms in the Sunset Clinic files than in other medical clinics where Ms. del Carmen Lopez had previously worked and that this seemed "unusual" to her.  This testimony constitutes permissible lay opinion testimony pursuant to Federal Rule of Evidence 701, as there is no "scientific, technical, or other specialized knowledge" that allowed Ms. del Carmen Lopez to notice that there were more forms in certain files. Fed. R. Evid. 701.  In addition, the subject matter of the testimony is rationally based on Ms. del Carmen Lopez's perception, and she is uniquely situated to make this comparative observation because she had access to both sets of files, which the jury does not, and thus this testimony is helpful to the jury in determining a fact in issue.  See also United States v. Burnette, 698 F.2d 1038, 1051 (9th Cir. 1983) (law enforcement officer's testimony that, in his opinion, an individual at rear of car holding screwdriver was removing the rear license plate was permissible, because it was rationally based on his perceptions and was helpful to a determination of a fact in issue); United States v. Beck, 418 F.3d 1008, 1015 (9th Cir. 2005) (lay opinion permissible where it is based upon personal observation and recollection of concrete facts).

In an analogous case, United States v. Manzano, 793 F. App'x 360 (6th Cir. 2019), licensed physical therapist witnesses described the differences between "legitimate" and "fraudulent" home health agencies, and indicated that a specific clinic fell on the fraudulent side because it paid patients and charged for visits that did not

1    occur.  Id. at 365.  The Sixth Circuit held that the district court

2    did not plainly err in allowing this testimony because it could have

3    reasonably concluded that such testimony was "rationally based on

4    [their] perception."  Id. (citing Fed. R. Evid. 701(a)).  Both

5    witnesses had worked at other home health agencies before they

6    pleaded guilty to conspiring to commit healthcare fraud at the

7    specific clinic.  Id.  Here, too, any observations that the number of

8    forms in charts were "unusual" was based on Ms. del Carmen Lopez's

9    perception from working at different clinics.

10        **D.   Percipient Witness Testimony**

11        Angelo Cruz, a Medicare fraud investigator, will be testifying

12   as a percipient fact witness regarding a post-payment review of the

13   Sunset Clinic that he conducted, which began while the fraud was

14   ongoing.  Mr. Cruz will testify as to his bases for making an

15   overpayment assessment of a particular amount, in reliance on

16   personal observations that he made during his investigation of the

17   Sunset Clinic and his recollection of concrete facts during that

18   investigation.  At the time of his investigation, in preparing his

19   overpayment assessment, Cruz made present-sense observations about

20   whether the Sunset Clinic was in compliance with certain Medicare

21   rules and regulations.  Mr. Cruz will explain those rules and

22   regulations only to the extent necessary to understand his present

23   sense observations and decisions at the time of the investigation—

24   facts about which he is serving as a percipient witness.  As a

25   result, Mr. Cruz constitutes a percipient fact witness because he is

26   not offering opinion testimony.  Accordingly, the government was not

27   required to disclose or designate him as an expert witness.

28   Phillips, 356 F.2d at 308 ("The state of a victim's mind at a

previous point in time is not the expression of an opinion within the
meaning of the rule . . .  This is nonetheless true where the state
of mind necessarily evinces an opinion formulated by that person at
that previous point in time.").  See also White, 492 F.3d at 405
(recognizing that bulk of the Medicare auditors' testimony properly
constituted lay testimony since they discussed the facts as they
personally perceived them while auditing the Medicare cost reports
submitted by defendants on behalf of the providers); United States v.
Kerley, 784 F.3d 327, 337-38 (6th Cir. 2015) (noting that in White,
the Sixth Circuit held that court did not abuse its discretion in
allowing Medicare auditors "to testify about their personal
involvement in auditing the defendants' cost reports and their
interactions with the defendants"). Cf. United States v. Millan, 730
F. App'x 488 (9th Cir. 2018) (district court erred in permitting
fraud examiner to testify as non-expert witness where fraud examiner
interpreted and categorized financial transactions based on
representations of fact made to her by the government's investigating
agents, not her own firsthand knowledge or observations).

### E.   Authentication and Foundation

#### 1.   Federal Rule of Evidence 901

Federal Rule of Evidence 901(a) provides that "[t]he requirement
of authentication or identification as a condition precedent to
admissibility is satisfied by evidence sufficient to support a
finding that the matter in question is what its proponent claims."
Fed. R. Evid. 901(a).  Under Rule 901(a), evidence should be
admitted, despite any challenge, once the government makes a prima
facie showing of authenticity or identification so "that a reasonable
juror could find in favor of authenticity or identification . . .

1    [because] the probative force of the evidence offered is, ultimately,

2    an issue for the jury." United States v. Chu Kong Yin, 925 F.2d 990,

3    996 (9th Cir. 1991) (citations and internal quotation marks omitted);

4    see also United States v. Black, 767 F.2d 1334, 1342 (9th Cir. 1985).

5    The government need not establish all links in the chain of custody

6    of an item or call all persons who were in a position to come into

7    contact with it.  See Gallego v. United States, 276 F.2d 914, 917

8    (9th Cir. 1960).  Alleged gaps in the chain of custody go to the

9    weight of the evidence rather than to its admissibility.  See United

10   States v. Taylor, 716 F.2d 701, 711 (9th Cir. 1983).  A duplicate is

11   admissible to the same extent as the original, unless there is a

12   genuine question as to the authenticity of the original or it would

13   be unfair under the circumstances to admit the duplicate in lieu of

14   the original.  See Fed. R. Evid. 1003; Smith, 893 F.2d at 1579.

15       The majority of the exhibits that will be introduced during the

16   retrial were admitted during the original trial, pursuant to implicit

17   or explicit findings by the Court of a sufficient showing of

18   authenticity and foundation.  As set out in the Notice of Prior

19   Rulings, it is the government's position that the Court's prior

20   rulings, including evidentiary rulings, are the law of the case.  (CR

21   538.)  However, the government still intends to make a sufficient

22   showing of authenticity and foundation for all exhibits.

23            2.   Audio Recordings

24       Depending on Smith's testimony, the government may seek to

25   introduce audio recordings captured during the investigation in this

26   case.  As noted above, these include an interview by agents of co-

27   conspirator/co-defendant Smith.  See Section VI.A.4, supra.  A

28   recording is admissible upon a showing that it is "accurate,

authentic, and generally trustworthy." United States v. King, 587

F.2d 956, 961 (9th Cir. 1978).  For example, testimony that a

recording depicts evidence that the witness observed is sufficient to

authenticate the recording.  Fed. R. Evid. 901(b); United States v.

Smith, 591 F.3d 974, 979-80 (8th Cir. 2010).

**F.   Transcript of Defendant's Recorded Meetings with a CI and Transcript of Co-defendant/Co-conspirator Smith's Recorded Interview**

The government intends to introduce excerpts of conversations

between defendant and a CI.[12]  The audio recordings are in Russian,

and the transcripts are in English.  When the transcripts are

translations from a foreign language into English, the transcript of

the English translation is the evidence rather than the recording.

United States v. Fuentes-Montijo, 68 F.3d 352, 355 (9th Cir. 1995)

("[W]hen faced with a taped conversation in a language other than

English and a disputed English translation transcript, the usual

admonition that the tape is the evidence and the transcript only a

guide is not only nonsensical, it has the potential for harm.");

United States v. Taghipour, 964 F.2d 908, 910 (9th Cir. 1992)

(affirming instruction to the jury that tape was the evidence for the

portion of the conversation in English, while the translated

transcript was the evidence for the portion of the conversation in

Farsi).  Accordingly, the government intends to introduce only the

transcript excerpts and to have three agents read the excerpted

English text into the record.

FBI SA Darrell Twedt will also testify about portions of the

conversation between the defendant and the CI, based on his review of

---

[12] See supra n.3.

the English transcript as well as his observations during the recorded conversations.  The Court's prior ruling found this testimony admissible.  (CR 354 at p. 95, 98.)  As set out in the Notice of Prior Rulings, it is the government's position that the Court's prior rulings, including evidentiary rulings, are the law of the case.  (CR 538.)

In addition, to the extent that Smith's statements are introduced through audio recordings, the government has prepared a written transcript of these recordings as an aid to the jury in listening to the audio recordings.  The government has provided copies of the government's transcript to the defense and has identified the excerpts that the government intends to introduce at trial.  The transcript and the excerpts are available should the Court wish to review them in advance of trial.

These recordings were in English.  For recorded conversations in the English language, the recording itself is the evidence, and a transcript of the recording may be provided as an aid in following the conversation.  See United States v. Chen, 754 F.2d 817, 824 (9th Cir. 1985); United States v. Phillips, 577 F.2d 495, 501-02 (9th Cir. 1978); see also United States v. Turner, 528 F.2d 143, 167 (9th Cir. 1975) (cautionary instruction given that only the recordings were evidence of the conversation).  To the extent admitted, the transcript of the Smith interview will be displayed on a screen simultaneous with the playing of the audio, but the transcript will not be admitted into evidence.

### G.   Cross-Examination of Defendant

A defendant who testifies at trial may be cross-examined as to all matters reasonably related to the issues he or she puts in

1  dispute during direct examination.  "A defendant has no right to

2  avoid cross-examination on matters which call into question his claim

3  of innocence."  United States v. Miranda-Uriarte, 649 F.2d 1345,

4  1353-54 (9th Cir. 1981).

5      Defendant's credibility will be crucial if he chooses to testify

6  in order to refute the government's showing of knowledge and intent.

7  Indeed, because defendant is the only witness with "direct" evidence

8  of his own knowledge and intent, if he takes the stand to deny any

9  knowledge of the fraud, his credibility becomes a key issue.

10      Moreover, the government is not required to provide notice of

11  matters about which it may seek to cross-examine defense witnesses,

12  including defendant, should he testify.

13      **H.   Defense Witnesses**

14      Defendant has neither provided a witness list to the government

15  nor identified any witnesses he intends to call.  To the extent

16  defendant elects to call witnesses at trial, the government requests

17  that the Court order defendant to provide an offer of proof with

18  respect to the anticipated testimony of those witnesses so that the

19  government may assess whether their testimony would be relevant and

20  otherwise admissible, and whether their testimony would implicate any

21  Fifth Amendment rights those witnesses might have, before the

22  witnesses take the stand.

23      **I.   Character Evidence**

24      The Supreme Court has recognized that character evidence –

25  particularly cumulative character evidence – has weak probative value

26  and great potential to confuse the issues and prejudice the jury.

27  See Michelson v. United States, 335 U.S. 469, 480, 486 (1948).  The

28

1    Court has thus given trial courts wide discretion to limit the

2    presentation of character evidence.  Id.

3         In addition, the form of the proffered evidence must be proper.

4    Federal Rule of Evidence 405(a) sets forth the sole methods for which

5    character evidence may be introduced.  It specifically states that,

6    where evidence of a character trait is admissible, proof may be made

7    in two ways:  (1) by testimony as to reputation and (2) by testimony

8    as to opinion.  Thus, a defendant may not introduce specific

9    instances of his or her good conduct through the testimony of others.

10   See Michelson, 335 U.S. at 477.  On cross-examination of a

11   defendant's character witness, however, the government may inquire

12   into specific instances of a defendant's past conduct relevant to the

13   character trait at issue.  See Fed. R. Evid. 405(a).  In particular,

14   a defendant's character witnesses may be cross-examined about their

15   knowledge of the defendant's past crimes, wrongful acts, and arrests.

16   See Michelson, 335 U.S. at 481.  The only prerequisite is that there

17   must be a good faith basis that the incidents inquired about are

18   relevant to the character trait at issue.  See United States v.

19   McCollom, 664 F.2d 56, 58 (5th Cir. 1981).

20        **J.   Reciprocal Discovery and Expert Disclosures**

21        The government has requested reciprocal discovery, Jencks

22   material, and expert disclosures from defendant.  In spite of these

23   requests, defendant has not produced any reciprocal discovery to

24   which the government is entitled under Rules 16 and 26.2 of the

25   Federal Rules of Criminal Procedure or the Jencks Act.  Thus, to the

26   extent defendant may attempt to introduce or use any documents at

27   trial that he has not previously produced, the government reserves

28   the right to object and to seek to have such documents precluded.

1

### K.   Jury Nullification

2    The Court should exclude any evidence and/or argument relating

3 to or concerning any possible jury nullification defense.  This

4 includes any evidence and/or argument meant to play on the jury's

5 sympathy for defendant.

6    It is well-established that a defendant does not have a right to

7 a jury nullification instruction.  <u>United States v. Powell</u>, 955 F.2d

8 1206, 1213 (9th Cir. 1992).  Having no right to seek jury

9 nullification, defendant has no right to present evidence relevant

10 only to such a defense.  <u>Zal v. Steppe</u>, 968 F.2d 924, 930 (9th Cir.

11 1992) (Trott, J., concurring) ("[N]either a defendant nor his

12 attorney has a right to present to a jury evidence that is <u>irrelevant</u>

13 to a <u>legal</u> defense to, or an element of, the crime charged.  Verdicts

14 must be based on the law and the evidence, <u>not</u> on jury nullification

15 as urged by either litigant.").

16    Since they do not make any fact in issue more or less probable,

17 evidence and arguments meant to play on the jury's sympathy are not

18 relevant under Federal Rule of Evidence 401 and must be excluded on

19 that basis.  In addition, appeals to sympathy are unduly prejudicial

20 and confusing to the jury and misleading under Rule 403 and,

21 //

22 //

23 //

24 //

25 //

26 //

27 //

28 //

therefore, properly excluded on that basis even if they had some
arguable relevance.

Dated: July 8, 2021            Respectfully submitted,

                               TRACY L. WILKISON
                               Acting United States Attorney

                               SCOTT M. GARRINGER
                               Assistant United States Attorney
                               Chief, Criminal Division


                                      _/s/_____
                               RACHEL N. AGRESS
                               ANDREW M. ROACH
                               BYRON R. TUYAY
                               Assistant United States Attorneys

                               Attorneys for Plaintiff
                               UNITED STATES OF AMERICA